**Hearing Date: March 11, 2014**
**Response Deadline: January 10, 2014**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————x

In re                                                      :        Chapter 11

BOSTON GENERATING, LLC, *et al.*,          :        Case No. 10-14419 (SCC)

                                                           :        (Jointly Administered)

                           Debtors.                  :
————————————————————————x

MARK HOLLIDAY, the Liquidating Trustee of the     :
BosGen Liquidating Trust,                                        :

                                                           :

                           *Plaintiff*,              :        Adversary Proceeding

              vs.                                       :        No. 12-01879 (SCC)

K ROAD POWER MANAGEMENT, LLC, *et al.*    :

                                                           :

                           *Defendants*.            :
————————————————————————x

# MEMORANDUM OF LAW OF THE NOMINATING COMMITTEE MEMBERS AND AFFILIATED TRANSFEREE DEFENDANTS IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

*Counsel for Anchorage Capital Master
Offshore, Ltd., Stonehill Institutional
Partners, L.P., Anchorage Capital Group,
L.L.C. f/k/a Anchorage Advisors, LLC,
Anchorage Capital Master Offshore II,
Ltd., Stonehill Capital Management LLC,
and Boston Generating Offshore
Holdings, Ltd.*

CLAYMAN & ROSENBERG LLP
305 Madison Avenue

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park, Bank of America Tower
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel for Sandell Asset Management Corp., Satellite
Asset Management L.P., CMI Holdings Investments, Ltd.,
Castlerigg Partners, L.P., Satellite Senior Income Fund,
LLC, Satellite Fund I, L.P., Satellite Fund II, L.P., Ex Orbit
Group, Ltd., Satellite Overseas Fund, Ltd., The Apogee
Fund, Ltd., Satellite Fund IV, L.P., Satellite Overseas Fund
V, Ltd., Satellite Overseas Fund VI, Ltd., Satellite Overseas
Fund VII, Ltd., Satellite Overseas Fund VIII, Ltd., and
Satellite Overseas Fund IX, Ltd. as to counts twelve, thirteen
and fourteen*

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
990 Stewart Avenue, Suite 300

New York, NY 10165
Telephone: (212) 922-1080
Fax: (212) 949-8255

*Counsel for Sandell Asset Management
Corp., CMI Holdings Investments, Ltd.,
and Castlerigg Partners, L.P. as to counts
one through six*

P.O. Box 9194
Garden City, NY  11530-9194
Telephone: (516) 741-6565
Fax: (516) 741-6706

*Counsel for Satellite Asset Management L.P., Satellite
Senior Income Fund, LLC, Satellite Fund I, L.P., Satellite
Fund II, L.P., Ex Orbit Group, Ltd., Satellite Overseas
Fund, Ltd., The Apogee Fund, Ltd., Satellite Fund IV, L.P.,
Satellite Overseas Fund V, Ltd., Satellite Overseas Fund VI,
Ltd., Satellite Overseas Fund VII, Ltd., Satellite Overseas
Fund VIII, Ltd., and Satellite Overseas Fund IX, Ltd. as to
counts one through six*

## TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ...............................................................................................1

II. STATEMENT OF FACTS.....................................................................................................5

    A. The Limited Role of the Nominating Committee .................................................................5

    B. The Transaction Was Approved Following a Transparent Process.....................................7

    C. The Nominating Committee Members Had No Special Role in the Transaction and
    Actually Invested Large Amounts in the Loans ................................................................8

    D. Following the Transaction, the Debtors Merged with Another Company, Valuing the
    Debtors at Over $3 Billion................................................................................................10

    E. The New Company Failed as a Result of Economic Conditions and Changes in the
    Energy Market Outside of the Debtors' Control ..............................................................10

    F. The Trustee Filed the Amended Complaint More than Six Years After the
    Transaction.......................................................................................................................10

III. ARGUMENT .......................................................................................................................11

    A. The Claims Against the Nominating Committee Members Fail Because There Is No
    Underlying Fraud ..............................................................................................................12

    B. The Aiding and Abetting Fraud Claim (Count Twelve) Fails Because the Trustee
    Does Not Plead *Facts* Showing that the Nominating Committee Members Had
    Actual Knowledge of or Provided Substantial Assistance to the Alleged Fraud .............12

    C. The Trustee Has Not Adequately Alleged a Claim for Civil Conspiracy (Count
    Thirteen)............................................................................................................................22

    D. The Trustee's Concert of Action Claim (Count Fourteen) Fails for Additional
    Reasons .............................................................................................................................25

    E. The Claims Against the Nominating Committee Members Are Time Barred...................26

    F. Counts One through Six against the Nominating Committee Members and the
    Affiliated Transferee Defendants as Recipients of the Alleged Fraudulent Transfers
    Must Be Dismissed ..........................................................................................................32

IV. CONCLUSION.....................................................................................................................35

<u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>Cases</u>

*Albion Alliance Mezzanine Fund, L.P. v. State Street Bank and Trust Co.*, 797
    N.Y.S.2d 699 (Sup. Ct. N.Y. Cnty. 2003) *aff'd*, 767 N.Y.S.2d 619 (1st Dep't
    2003)....................................................................................................................... 18

*Alexander & Alexander of N.Y., Inc. v. Fritzen*, 68 N.Y.2d 968 (1986)...................................... 12

*Amusement Indus., Inc. v. Buchanan Ingersoll & Rooney, P.C.*, 11 Civ. 4416, 2012
    WL 1193353 (S.D.N.Y. Apr. 10, 2012) .............................................................. 25

*Antares Mgmt. LLC v. Galt Global Capital, Inc.*, No. 12 Civ. 6075, 2013 WL
    1209799 (S.D.N.Y. Mar. 22, 2013) ..................................................................... 18

*Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010) ............................... 16

*Armstrong v. McAlpin*, 699 F.2d 79 (2d Cir. 1983) ...................................................................... 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................. 3, 11

*Atlantic Int'l Movers LLC v. Ocean World Lines, Inc.*, 914 F. Supp. 2d 267
    (E.D.N.Y. 2012)................................................................................................... 24

*Ballhaus v. Morgan Guar. Trust Co.*, 648 N.Y.S.2d 578 (App. Div. 1st Dep't 1996) ................ 29

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................. 3, 11, 22, 23

*Berman v. Morgan Keegan & Co. Inc.*, No. 10-CV-5866, 2011 WL 1002683
    (S.D.N.Y. Mar. 14, 2011) .................................................................................... 15

*Bigio v. Coca-Cola Co.*, 675 F.3d 163 (2d Cir. 2012) .................................................................. 22

*BRS Assocs. LP v. Dansker*, 246 B.R. 755 (S.D.N.Y. 2000) ........................................................ 27

*Campbell v. Thales Fund. Mgmt. LLC*, No. 10 Civ. 3177, 2010 WL 4455299,
    (S.D.N.Y. Oct. 12, 2010) ..................................................................................... 24

*Cole v. Miraflor*, 02 Civ. 9981, 2006 WL 457817, (S.D.N.Y. Feb. 23, 2006)............................ 31

*Cresser v. Am Tobacco Co.*, 174 Misc. 2d 1 (Sup. Ct. N.Y. Cnty. 1997) ................................... 26

*Cromer Finance Ltd. v. Berger*, 137 F. Supp. 2d 452 (S.D.N.Y. 2001)....................................... 22

*DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627 (S.D.N.Y.
    2011) ................................................................................................................ 22, 24

*Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 747 F. Supp. 922 (S.D.N.Y.
    1990)...................................................................................................................... 31

*Ellison v. Am. Image Motor Co.*, 36 F. Supp. 2d 628 (S.D.N.Y. 1999) ....................................... 13

*Erbe v. Lincoln Rochester Trust Co.*, 3 N.Y.2d 321 (1957) ......................................................... 29

*ESBE Hldgs., Inc. v. Vanquish Acquisition Partners, LLC*, (N.Y. Sup. Ct. N.Y. Cnty. Nov. 20, 2006), *aff'd* 858 N.Y.S.2d 94 (App. Div. 1st Dep't 2008). ...................................... 30

*Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553 (2009) .................................. 18

*Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804 (2d Cir. 2000) ..................................................... 28

*Fierro v. Gallucci*, No. 06-CV-5189, 2008 (E.D.N.Y. May 12, 2008) ........................................ 23

*Filler v. Hanvit Bank*, No. 01 Civ. 9510, 2003 WL 22110773 (S.D.N.Y. Sept. 12, 2003) ................................................................................................................................ 19, 23

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994)................................ 21

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349 (S.D.N.Y. 2007)............................................................................................................................ 20

*Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597 (S.D.N.Y. 2008), *aff'd* 347 F. App'x 665 (2d Cir. 2009) ............................................................................................................ 13

*Ghandour v. Shearson Lehman Bros. Inc.*, 624 N.Y.S.2d 390 (App. Div. 1st Dep't 1995) .................................................................................................................................... 29

*Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525 (1999) ............................................................ 27

*Gutkin v. Siegal*, 926 N.Y.S.2d 485 (App. Div. 1st Dep't 2011) .................................................. 29

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) ...................................... 23

*HICA Educ. Loan Corp. v. Bolte*, No.11-cv-6404, 2012 WL 423361 (S.D.N.Y. Feb. 10, 2012) ................................................................................................................................ 23

*In re AlphaStar Ins. Group Ltd.*, 383 B.R. 231 (Bankr. S.D.N.Y. 2008) .................................... 15

*In re OldCar Co. LLC*, 435 B.R. 169 (Bankr. S.D.N.Y. 2010) ............................................. 14, 17

*In re RSL COM Primecall, Inc.*, Adv. Proc. No. 03-2176 (ALG), 2003 WL 22989669 (Bankr. S.D.N.Y. Dec. 11, 2003)................................................................................... 13, 14

*In re Tarragon Corp. Sec. Litig.*, 07 Civ. 7972, 2009 U.S. Dist. (S.D.N.Y. Mar. 27, 2009) ................................................................................................................................ 21

*In re The Mediators*, 190 B.R. 515 (S.D.N.Y. 1995), *aff'd* 105 F.3d 822 (2d Cir. 1997) ................................................................................................................................ 31

*In re Theatre Row Phase II Assocs.*, 385 B.R. 511 (Bankr. S.D.N.Y. 2008) ................................ 5

*Kolbeck v. LIT, Am., Inc.*, 939 F. Supp. 240 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998)................................................................................................................................ 14

*Linden v. Moskowitz*, 294 A.D.2d 114 (App. Div. 1st Dep't 2002) .............................................. 12

*Malone v. Bayerische Hypo-Und Vereins Bank AG*, Nos. 08 Civ. 7277, 09 Civ. 3676, 2010 WL 391826 (S.D.N.Y. Feb. 4, 2010).......................................................................... 26

*Manela v. Gottlieb*, 784 F. Supp. 84 (S.D.N.Y. 1992) ................................................................ 15

*Met. Life Ins. Co. v. Morgan Stanley*, 2013 Slip. Op. 31544(u), 2013 WL 3724938 (N.Y. Sup. Ct. N.Y. Cnty. 2013) .......................................................................................... 27

*Metro Ambulance, Inc. v. E. Med. Billing, Inc.*, Civ. A. No. 13929, 1995 WL
409015, (Del. Ch. July 5, 1995)................................................................. 18

*MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp.
913 (S.D.N.Y. 1995)........................................................................ 17

*Moody v. Morris*, 608 F. Supp. 2d 575 (S.D.N.Y. 2009)................................. 23

*Morin v. Trupin*, 711 F. Supp. 97 (S.D.N.Y. 1989)..................................... 20

*Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*, No. 98 Civ. 4960 (MBM), 1999
WL 558141 (S.D.N.Y. July 30, 1999)....................................................... 31

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000)......................................... 15

*O'Brien v. Nat'l Property Analysts Partners*, 719 F. Supp. 222 (S.D.N.Y. 1989)....... 31

*Pittman by Pittman v. Grayson*, 149 F.3d 111 (2d Cir. 1998)........................... 26

*RA Global Servs., Inc. v. Avicenna Overseas Corp.*, 817 F. Supp. 2d 274 (S.D.N.Y.
2011)........................................................................................ 27

*Rastelli v. Goodyear Tire Co.*, 79 N.Y.2d 289 (1992)............................... 26, 27

*Richman v. Goldman Sachs Group, Inc.*, 868 F. Supp. 2d 261 (S.D.N.Y. 2012)........... 5

*Rosner v. Bank of China*, 528 F. Supp. 2d 419 (S.D.N.Y. 2007)...................... 13, 16

*Schlansky v. United Merchants & Mfrs., Inc.*, 443 F. Supp. 1054 (S.D.N.Y. 1977)...... 15

*Schwartz v. Soc'y of the N.Y. Hosp.*, 605 N.Y.S.2d 72 (App. Div. 1st Dep't 1993)...... 24

*Sec. Investor Protection Corp. v. Bernard L. Madoff Investment Sec. LLC*, No. 12
MC 115, 2013 WL 1609154, (S.D.N.Y. Apr. 15, 2013)...................................... 32

*Segal v. Gordon*, 467 F.2d 602 (2d Cir. 1972)...................................... 14, 27

*Shared Commc'ns Servs. of ESR, Inc. v. Goldman, Sachs & Co.*, 832 N.Y.S.2d 32
(App. Div. 1st Dep't 2007)................................................................. 31

*Slayton v. Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006).............................. 28

*Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43 (1999)................................. 12

*Sompo Japan Ins. Co. of Am. v. Travelers Indemnity Co.*, No. 118223/2003, 2004
WL 5487929 (N.Y. Sup. Ct. July 6, 2004)................................................ 27

*South Cherry St., LLC v. Hennessee Group LLC*, 573 F.3d 98 (2d Cir. 2009)........... 11

*Spira v. Curtin*, No. 97 Civ. 2637 (TPG), 2001 (S.D.N.Y. June 5, 2001)............... 23

*Stanfield Offshore Leveraged Assets, Ltd. v. Metro. Life Ins. Co.*, 883 N.Y.S.2d 486,
(N.Y. App. Div. 1st Dep't 2009)........................................................... 12

*Stuart v. Am. Cyanamid Co.*, 158 F.3d 622 (2d Cir. 1998)............................. 27

*Transp. Workers Union of Am. Local 100 AFL-CIO v. Schwartz*, 794 N.Y.S.2d 308
(App. Div. 1st Dep't 2005)................................................................. 24

*Vilar v. Rutledge*, 964 N.Y.S.2d 527 (App. Div. 1st Dep't 2013)...................... 12

Page

*Vogel v. Sands Bros. & Co., Ltd.*, 126 F. Supp. 2d 730 (S.D.N.Y. 2001) .................................... 15

*Von Hoffmann v. Prudential Ins. Co.*, 202 F. Supp. 2d 252 (S.D.N.Y. 2002)............................ 30

*Wiesner v. Willkie Farr & Gallagher*, 785 F. Supp. 408 (S.D.N.Y. 1992) .................................. 13

*Zerman v. Ball*, 735 F.2d 15 (2d Cir. 1984).............................................................................. 13

*Zumpano v. Quinn*, 849 N.E.2d 926 (N.Y. 2006) ...................................................................... 31

Statutes

Bankruptcy Code § 546(e) ........................................................................................................... 4

C.P.L.R. § 202............................................................................................................................. 27

Del. Code Ann. tit. 10, § 8106 .................................................................................................... 27

Mass. Gen. Laws ch. 260, § 2A .................................................................................................. 27

Rules

Fed. R. Bankr. P. 7009 .................................................................................................................. 1

Fed. R. Bankr. P. 7012(b) ............................................................................................................. 1

Fed. R. Civ. P. 12(b)(6)............................................................................................................ 1, 11

Fed. R. Civ. P. 15(c) .................................................................................................................... 28

Fed. R. Civ. P. 9(b) ................................................................................................................. 1, 13

Defendants Anchorage Capital Master Offshore, Ltd., Satellite Asset Management, L.P., Stonehill Institutional Partners, L.P., Sandell Asset Management Corp., (collectively, the "Nominating Committee Members"), and together with their respective affiliates named in the Amended Complaint (such affiliates, the "Affiliated Transferee Defendants")[1], respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) as incorporated in  Fed. R. Bankr. P. 7009 and 7012(b), to dismiss Counts One through Six and Twelve through Fourteen of the Amended Complaint (the "Amended Complaint")[2] filed by Mark Holliday as the Liquidating Trustee of the BosGen Liquidating Trust (the "Trustee") and state as follows:

## I.
## PRELIMINARY STATEMENT[3]

Standing in the shoes of some of the world's most sophisticated lenders, the Trustee seeks to unwind a recapitalization transaction (the "Transaction"), even though the recapitalized company merged with a sophisticated party six months after the Transaction, operated successfully for nearly *four years* following the Transaction, and ultimately declared bankruptcy only in the midst of a major global financial crisis.  And now, nearly seven years after the Transaction, the Trustee—suing to recover distributions made to the equity security holders of EBG Holdings LLC ("EBG") and money damages from EBG's manager, K Road Power Management LLC ("K Road") and certain of its affiliates and employees—tosses in

---

[1]    The Affiliated Transferee Defendants are Anchorage Capital Group, L.L.C. f/k/a Anchorage Advisors, LLC, Anchorage Capital Master Offshore II, Ltd., Boston Generating Offshore Holdings, Ltd., Stonehill Capital Management LLC, CMI Holdings Investments, Ltd., Castlerigg Partners, L.P., Ex Orbit Group, Ltd., Satellite Overseas Fund, Ltd., The Apogee Fund, Ltd., Satellite Fund IV, L.P., Satellite Overseas Fund V, Ltd., Satellite Overseas Fund VI, Ltd., Satellite Overseas Fund VII, Ltd., Satellite Overseas Fund VIII, Ltd., Satellite Overseas Fund IX, Ltd., Satellite Senior Income Fund, LLC, Satellite Fund I, L.P., and Satellite Fund II, L.P.

[2]    The complaint was originally filed on August 17, 2012 (the "Original Complaint") and then amended nearly twelve months later on August 1, 2013 (the "Amended Complaint").

[3]    Capitalized terms not defined herein shall have the meaning ascribed to them in the Memorandum of Law in Support of Motion to Dismiss Counts One Through Six of the Amended Complaint (the "Moving Defendants' Brief"), filed contemporaneously herewith.

claims against the so-called "Nominating Committee", a group of four unaffiliated investment funds who had no role or authority with respect to the Debtors' management or operations and no authority to independently approve the Transaction.  Without citing a single particularized fact, the Trustee alleges that the Nominating Committee Members aided and conspired with K Road to defraud the sophisticated lenders simply by failing to share what they supposedly knew.

These claims against the Nominating Committee Members are defective for at least the following reasons:  first, there is no underlying fraud; second, the Trustee's theory is absurd in light of the investments in EBG and/or Boston Generating that the Nominating Committee Members and their affiliates made after the Transaction; third, the Trustee pleads no facts, much less particularized facts, about any Nominating Committee Member's role in the supposed fraud; and, fourth, the claims are untimely.

### A.    The Underlying Fraud is Implausible

The Trustee's entire premise that the Transaction was fraudulent is implausible. The Transaction was financed by the sophisticated lenders, who consented to the Transaction and lent the Debtors almost $2 billion in secured and unsecured debt to finance it (the "Loans"), but in whose shoes the Trustee now stands in an attempt to unwind it.  Just six months after the Transaction closed, the Debtors—allegedly insolvent—merged with an independent third party at a purchase price of more than $1.2 billion and an "enterprise valuation" of over $3 billion. Moreover, the Debtors continued operating for nearly four years after the Transaction closed— and over three years after the beginning of the "Great Recession"—before filing their Chapter 11 petitions.  In short, there was no underlying fraud to assist (as set forth in K Road's motion to dismiss the Amended Complaint filed contemporaneously herewith) and thus no claims to aid or conspire in any fraud.

### B.    The Alleged Conspiracy Is Absurd

The Trustee's theory that the Nominating Committee Members assisted and conspired in a scheme to defraud the lenders that financed the Transaction is absurd because the Nominating Committee Members and their respective affiliates invested millions of dollars in the Loans alongside the allegedly duped lenders.  If the Trustee is right, then the Nominating Committee Members (and their affiliates) voluntarily invested over $381 million in the Loans shortly after the Transaction closed knowing at the time they made their respective investments that the investments would likely be wiped out or significantly impaired.  That theory is absurd.

### C.    The Allegations are Conclusory

The Trustee's claims against the Nominating Committee Members fail to satisfy the pleading requirements set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Nor do they meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  The Amended Complaint is peppered with conclusory allegations that the Nominating Committee "approved," "ratified," "urg[ed]," "consented to," and "blessed" the Transaction and K Road's alleged conduct, but there is no allegation anywhere in the Amended Complaint about how or when this "approval," "ratification," "urging," "consent," or "blessing" occurred.  Furthermore, the Trustee's allegations improperly group together the Nominating Committee Members without ever identifying the actions of any particular member. These hopelessly vague allegations are insufficient to state a claim as a matter of law.

### D.    The Claims Are Time-Barred

The Trustee has failed to plead facts to show that he is entitled to the benefit of New York's six year statute of limitations.  But even if he had, the claims would still be time-barred because the Amended Complaint was filed *after* New York's six year statute of limitations

had expired.  And the Trustee's attempt to invoke the discovery rule or equitable tolling is futile.

The discovery rule's two year period expired at the absolute latest two years after the Debtors

filed their Chapter 11 petitions (*i.e.*, in August 2012), nearly a year before the Trustee filed the

Amended Complaint.  Equitable tolling is also unavailable to the Trustee, because, even if that

doctrine applied to state law claims, the Trustee fails to allege any specific steps that the

individual Nominating Committee Members took to prevent discovery of the alleged scheme.

Lastly, the Amended Complaint's newly added claims against the Nominating Committee

Members do not relate back to the filing of the Original Complaint, because each new claim is

based on new facts and circumstances.

> **E.      The Trustee's Claims Fail as Against the Nominating Committee
> Members and the Affiliated Transferee Defendants For the Reasons
> Stated in the Moving Defendants' Brief**

In addition, Counts One through Six, asserted against the Nominating Committee

Members and the Affiliated Transferee Defendants as transferees of distributions and

redemptions from EBG, should be dismissed for the reasons set forth in the Moving Defendants'

Brief, which is incorporated herein by reference.  In short, those claims must be dismissed

because (i) they are barred by Delaware's statute of repose for distributions to LLC members; (ii)

the distributions and redemptions are protected by Bankruptcy Code § 546(e) as "settlement

payments" and payments "in connection with a securities contract"; (iii) the Trustee lacks

standing to bring his unjust enrichment and constructive trust claims and, in any event, fails to

plead the required elements; and (iv) the Trustee cannot recover on behalf of creditors who

ratified the distributions and redemptions.

Accordingly, all the claims against the Nominating Committee Members and the

Affiliated Transferee Defendants should be dismissed in their entirety and with prejudice.[4]

## II.
## STATEMENT OF FACTS[5]

### A.    THE LIMITED ROLE OF THE NOMINATING COMMITTEE

Prior to February 2004, Boston Generating, LLC ("Boston Generating"), a power

generating company, was owned by Exelon New England Holdings, LLC ("Exelon").  (Am.

Compl. ¶ 77).  At that time, the four investment funds whose affiliates would become the

Nominating Committee Members were among Boston Generating's secured lenders.  (Am.

Compl. ¶¶ 30, 77).  On February 23, 2004, Exelon, after experiencing financial difficulties with

Boston Generating, entered into a settlement in lieu of foreclosure with its secured lenders.  (Am.

Compl. ¶¶ 30, 77).  Pursuant to that settlement, Exelon's interests in Boston Generating were

transferred to a new entity, EBG Holdings LLC, which was owned by the secured lenders,

including the Nominating Committee Members.  (Am. Compl. ¶¶ 30, 77).

The relative rights and obligations of EBG's equity holders were heavily

negotiated and detailed in a more than 100-page-long Amended and Restated Limited Liability

---

[4]    The Nominating Committee Members and the Affiliated Transferee Defendants also expressly incorporate all arguments made by the other defendants filing contemporaneous motions to dismiss, to the extent those arguments apply to the Nominating Committee Members and the Affiliated Transferee Defendants.  The Nominating Committee Members and the Affiliated Transferee Defendants reserve the right to address such arguments in their reply brief and in any future proceedings.

[5]    The factual background is taken from (i) the Amended Complaint; (ii) documents incorporated by reference in the Amended Complaint; (iii) documents that the Trustee had notice of and relied on in bringing suit; and (iv) facts capable of being judicially noticed, including filings from the Debtors' bankruptcy cases, filings in this litigation, and filings with the Securities and Exchange Commission ("SEC").  *See In re Hydrogen, L.L.C.*, 431 B.R. 337, 345 (Bankr. S.D.N.Y. 2010); *see also Richman v. Goldman Sachs Group, Inc.*, 868 F. Supp. 2d 261, 273 n.3 (S.D.N.Y. 2012) (judicial notice of SEC filings); *In re Theatre Row Phase II Assocs.*, 385 B.R. 511, 520 (Bankr. S.D.N.Y. 2008) (judicial notice of filings in bankruptcy cases and adversary proceedings).  The Debtors' pre-petition history and the history of the Debtors' bankruptcy cases are well known to this Court and need not be repeated here.

Company Agreement (the "EBG LLC Agreement").[6]  Under the EBG LLC Agreement, EBG

was to be governed by a seven member Board of Directors, five of whom were to be

"Independent Directors."[7]  The other two directors were to be designated by K Road, the power

management company brought in to manage the day-to-day operations of EBG after the Exelon

settlement.  (Am. Compl. ¶¶ 78, 86).

        The Nominating Committee's sole role in EBG was to nominate the "Independent

Directors" and to set the compensation levels for the "initial" Board of Directors.[8]  The

Nominating Committee itself had no role or authority with respect to the management or

operations of EBG or any of its subsidiaries.[9]  Under the EBG LLC Agreement, the five

"Independent Directors" were required to be independent of K Road and EBG's members,

including the Nominating Committee Members.  Indeed, the Independent Directors could not be

affiliated with any "Member" of EBG and were prohibited from having any "material

relationship with the Company, any Majority Subsidiary, any Member or any Affiliate of any

Member."[10]

---

[6]  *See* Declaration of William H. Gussman, Jr. in Support of the Nominating Committee Members' and Affiliated Transferee Defendants' Motion to Dismiss the Amended Complaint ("Gussman Decl."), Ex. A:  Amended and Restated Limited Liability Company Agreement of EBG Holdings LLC ("EBG LLC Agreement"); *see also* Am. Compl. ¶¶ 85-87.  The Court may consider the EBG LLC Agreement on a motion to dismiss because the Trustee references it in the Amended Complaint and relies on its effect in asserting his claims. (*See* Am. Compl. ¶¶ 85-87, 288); *In re Hydrogen, L.L.C.*, 431 B.R. at 345.

[7]  Am. Compl. ¶ 86; EBG LLC Agreement, Schedule C ("Board Election Procedures"), § 1(a).

[8]  *See* Am. Compl. ¶ 30; EBG LLC Agreement, § 5.2(b) and Board Election Procedures.

[9]  *See* EBG LLC Agreement, § 5.1.

[10]  EBG LLC Agreement, § 1.1, at 9-10.  Thus, Trustee's allegation that Nominating Committee Members "constituted 100% of the Board of Directors of EBG" is inaccurate.  (Am. Compl. ¶ 30).  None of the Nominating Committee Members or any of their respective affiliates were directors, rather they appointed the "Independent Directors."  (*See* EBG LLC Agreement, Board Election Procedures).

6

## B.      THE TRANSACTION WAS APPROVED FOLLOWING A TRANSPARENT PROCESS

The Transaction's general background is set forth in the Moving Defendants' Brief.  To avoid unnecessary duplication those facts are incorporated herein by reference.  (*See* Moving Defendants' Brief at 4-7).

The crux of the Trustee's theory is that K Road allegedly created and disseminated to potential lenders a series of misleading documents about EBG's future performance to finance the Transaction.  These documents included a Confidential Information Memorandum ("CIM"), a Private Supplement to the CIM ("CIM-PS"), a Private Investors Supplement to the CIM ("CIM-PIS"), and a lender's presentation ("LP").  (Am. Compl. ¶ 118).[11]

The Trustee alleges that these documents misrepresented the functioning of certain hedging transactions (the "Hedges") entered into by the Debtors.  (*See* Am. Compl. ¶¶ 95-101).  The Trustee admits, however, that the existence of and the Debtors' use of the Hedges were fully disclosed in documents provided to the lenders that financed the Transaction, including the fact that the Hedges could be "turned off" when economically desirable to do so.[12] Moreover, each potential lender that received the CIM or the CIM-PIS agreed and acknowledged that (i) those documents were not intended to be "all-inclusive" sources of information, (ii) each

---

[11]  The Amended Complaint alleges that the "centerpiece" of the alleged fraud was a series of "fundamentally misleading and unreasonable Projections."  (Am. Compl. ¶ 94).  Yet, neither the LP nor the CIM includes the "Projections."  (*Compare* Am. Compl. ¶¶ 94, 107, 109 (describing the Projections as including specific operating predictions regarding EBITDA, revenue sources, expenses, capital expenditures, and debt reduction timetables), *with* Gussman Decl. Ex. B:  Confidential Information Memorandum (the "CIM"), at 31, 57-64, 86-87 (providing historical financial information, general market developments and predictions, and a description of the Hedges), *and* Gussman Decl. Ex. D:  Lenders' Presentation (the "LP"), at 1, 6-7, 23, 29-33 (same)).  Accordingly, only those lenders who received the CIM-PIS could possibly have relied on the information in the Projections that was not also contained in the other documents, such as estimated future EBITDA.  (Am. Compl. ¶ 94; Gussman Decl. Ex. C:  Confidential Information Memorandum-Private Investors Supplement (the "CIM-PIS"), at 8-11).

[12]  Am. Compl. ¶¶ 121, 123-24; *see* CIM at 86-87 (explaining the circumstances under which the Hedges were likely to be "turn[ed] off").

7

potential lender should conduct its "own independent investigation and analysis" of the Debtors

and the Transaction, and (iii) the assumptions in the documents "may not prove to be correct."[13]

## C.    THE NOMINATING COMMITTEE MEMBERS HAD NO SPECIAL ROLE IN THE TRANSACTION AND ACTUALLY INVESTED LARGE AMOUNTS IN THE LOANS

The Nominating Committee Members and the Affiliated Transferee Defendants,

like other EBG unit holders, redeemed their units and received dividends pursuant to the

Transaction.  (*See* Am. Compl. ¶¶ 44, 46, 47, 49, Ex. A).  The additional allegations against the

Nominating Committee Members—which had no authority to negotiate or approve the

Transaction—are limited.  The Trustee does not allege that the Nominating Committee Members

helped prepare or disseminate any of the allegedly misleading documents.  Nor does he identify

any culpable action by any particular Nominating Committee Member.  Instead, the Trustee

aggregates the four independent members together for pleading purposes, even though they are

unaffiliated entities and wholly independent.

The Trustee alleges in a conclusory fashion that the Nominating Committee

"approved," "ratified," "urg[ed]," "consented to," and "blessed" the Transaction and K Road's

conduct.  (Am. Compl. ¶¶ 31, 166, 261, 263).  However, pursuant to the  EBG LLC Agreement,

the Transaction required approval by a majority of the Board of Directors, at least 75 percent of

all outstanding units, and at least 50 percent of all Class A Units.[14]  The "Nominating

Committee's" approval was simply not required under the EBG LLC Agreement.  The Trustee

also alleges that, "upon information and belief," the Nominating Committee Members had access

to internal EBG/Boston Generating financial information that EBG's Independent Directors did

not, which allegedly showed the falsity of the Projections.  (Am. Compl. ¶ 31).  The Trustee also

---

[13]  CIM-PIS at 4; CIM at 4.

[14]  *See* EBG LLC Agreement, §§ 5.3(a)(vi), (viii), (xiv), (xvii), (xx); 5.3(b)(i), (vi); 5.3(c)(ii); 5.3(d)(i)).

faults the Nominating Committee Members for failing to disclose K Road's alleged fraud. (Am. Compl. ¶ 31).[15]

Tellingly, the Trustee ignores the fact that shortly after the Transaction closed (i.e., within 60 days) the Nominating Committee Members or certain of their respective affiliates invested millions of dollars as purchasers of the Loans in the primary syndication and subsequent secondary market:

- Satellite Senior Income Fund, LLC, an affiliate of Satellite Asset Management, L.P., and one or more of its affiliated funds invested at least $237 million in the Loans.[16]

- Anchorage Capital Master Offshore, Ltd. and one or more of its affiliated funds invested at least $68 million in the Loans.[17]

- Stonehill Offshore Partners Limited, an affiliate of Stonehill Institutional Partners, L.P., invested at least $41 million in the Loans.[18]

- Castlerigg Master Investments, Ltd., an affiliate of Sandell Asset Management Corp., invested at least $35 million in the Loans.[19]

Thus, the Trustee's theory is that the alleged aiders and abettors of K Road's fraudulent scheme apparently duped themselves and their affiliates.[20]

---

[15] In paragraphs 30 and 31 of the Amended Complaint, the Trustee makes certain additional allegations with respect to the Nominating Committee's conduct. Those allegations are patently false and wholly irrelevant to his claims against the Nominating Committee Members.

[16] *See* Gussman Decl. Exs. W-CC (showing $237 million invested in the Loans).

[17] *See* Gussman Decl. Exs. J-S (showing a net $68 million invested in the Loans).

[18] *See* Gussman Decl. Exs. T-U (showing $41 million invested in the Loans).

[19] *See* Gussman Decl. Ex. V (showing $35 million invested in the Loans).

[20] The Assignment and Assumption Agreements attached to the Declaration of William H. Gussman, Jr. show the investments in the Loans by the Nominating Committee Members and their affiliates. (*See* Gussman Decl. Exs. J-CC). These agreements are part of the Credit Agreements (which are referenced and relied on in the Amended Complaint, *see* Am. Compl. ¶¶ 129-30), and once an Assignment and Assumption Agreement is executed by the applicable Administrative Agent, the assignee becomes a Lender under the applicable Credit Agreement. (*See* Gussman Decl. Ex. G: First Lien Credit and Guaranty Agreement (the "First Lien Credit Agreement"), § 9.07 and Exhibit C; Gussman Decl. Ex. H: Second Lien Credit and Guaranty Agreement (the "Second Lien Credit Agreement"), § 9.07 and Exhibit C; Gussman Decl. Ex. I: Credit Agreement (the "Mezzanine Credit Agreement"), § 8.07 and Exhibit C). Moreover, the Amended Complaint alleges that the Loans were assigned to purchasers. (*See* Am. Compl. ¶ 118). Accordingly, the Assignment and Assumption Agreements can be considered on this motion. *See In re OldCar Co. LLC*, 435 B.R. 169, 181, 183-84 (Bankr. S.D.N.Y. 2010) (considering a "Contribution Agreement" showing the investment of a third party where the complaint challenged

**D.  FOLLOWING THE TRANSACTION, THE DEBTORS MERGED WITH ANOTHER COMPANY, VALUING THE DEBTORS AT OVER $3 BILLION**

Just months after the Transaction closed, the Debtors were acquired by an independent third party, becoming wholly owned subsidiaries of US Power Generating Company ("US Power") through an auction that resulted in the merger of EBG with one of US Power's subsidiaries, Astoria Generating Company Holdings LLC.[21]  That transaction was accounted for with a purchase price of over $1.2 billion and an "enterprise valuation" of over $3 billion.[22]

**E.    THE NEW COMPANY FAILED AS A RESULT OF ECONOMIC CONDITIONS AND CHANGES IN THE ENERGY MARKET OUTSIDE OF THE DEBTORS' CONTROL**

After US Power's acquisition of EBG, the Debtors' performance deteriorated. (Am. Compl. ¶ 144).  By September 2008, the Debtors retained a restructuring advisor, and, by mid-2009—in the midst of the worst recession since the Great Depression—the Debtors notified their lenders that they were close to defaulting on their obligations. (Am. Compl. ¶ 144). Nonetheless, the Debtors continued operating until August 2010—nearly four years after the Transaction closed in December 2006. (*See* Am. Compl. ¶¶ 72, 129-33).

**F.    THE TRUSTEE FILED THE AMENDED COMPLAINT MORE THAN SIX YEARS AFTER THE TRANSACTION**

The Debtors filed petitions under Chapter 11 on August 18, 2010.  (Am. Compl. ¶ 72).  On August 1, 2013, more than six and a half years after the Transaction closed, the Trustee filed its Amended Complaint, asserting for the first time claims against the "Nominating

---

a transaction made "in contemplation of a transaction with a third party").  In addition, the Court may take judicial notice of the actions of market participants at the time of the Transaction.  *Id*. at 193 & n.20.

[21] *See* Decl. of Jeff Hunter in Supp. of Chapter 11 Pets. and First Day Pleadings ("Hunter Decl.") ¶ 10, *In re Boston Generating, LLC*, No. 10-14419, ECF No.2 (Bankr. S.D.N.Y. Aug. 18, 2010).

[22] *See* Gussman Decl. Ex. E:  K Road Acquisition Corp., Registration Statement Under the Securities Act of 1933 (Amendment No. 3 to Form S-1), at 3 (May 9, 2008) ("K Road Form S-1") ("enterprise valuation" of more than $3 billion); Gussman Decl. Ex. F:  US Power Generating Co., Registration Statement Under the Securities Act of 1933 (Form S-1), at F-34-35 (Aug. 12, 2008) ("US Power Form S-1") (purchase price of "$1,203,300" (dollars in thousands)).  The Trustee references and relies on the K Road Form S-1 in the Amended Complaint.  (*See* Am. Compl. ¶ 27).

10

Committee."[23]   Based on his hopelessly vague allegations that the Nominating Committee

Members "blessed" and "consented" to K Road's plan for the Transaction, the Trustee asserts

claims against the Nominating Committee Members of aiding and abetting fraud (Count

Twelve), civil conspiracy (Count Thirteen), and concert of action (Count Fourteen).   The Trustee

purports to assert these claims and the claims against the Affiliated Transferee Defendants on

behalf of the Debtors' creditors who assigned their claims to him pursuant to the Plan (these

creditors are collectively referred to as the "<u>Assignors</u>").   (Am. Compl. ¶¶ 4, 149, 156, 164, 174,

188, 198, 260, 267, 275).[24]

### III.
### ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a complaint must contain "sufficient factual matter, accepted as true, to state a claim

to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal

citations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *South Cherry

St., LLC v. Hennessee Group LLC*, 573 F.3d 98, 110 (2d Cir. 2009).   Under Rule 8(a), "[a] claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  *Id.*  Nor do allegations that are "merely consistent with" a

---

[23]   The Nominating Committee Members were named in the Original Complaint only as transferee defendants.  (*See* Original Complaint, ¶¶ 50, 52, 53, 55, 64-65, Ex. A).  In fact, the Original Complaint does not make a single reference to the "Nominating Committee" or to the Nominating Committee's role in EBG.

[24]   As noted in the Moving Defendants' Brief, 97 percent of these assigned claims belong to the lenders under the Credit Agreements.  (Moving Defendants' Brief at 9).  The remaining 3 percent are "miscellaneous" claims.  (*Id.*). As to the Assignors of these miscellaneous claims, the Trustee has not alleged anything about them.  However, because they were not lenders, there can be no reasonable inference that they received, let alone relied upon, any of the allegedly misleading documents, which were specifically intended for and provided to the lenders. Accordingly, these miscellaneous creditors could not have been defrauded by K Road's alleged scheme and therefore cannot maintain aiding and abetting, conspiracy, or concert of action claims against the Nominating Committee Members.

defendant's liability. *Id.* Thus, if the plaintiffs "have not nudged their claims across the line

from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In determining plausibility, courts rely on their "judicial experience and common sense." *Iqbal*,

556 U.S. at 679.

**A.    THE CLAIMS AGAINST THE NOMINATING COMMITTEE MEMBERS FAIL
BECAUSE THERE IS NO UNDERLYING FRAUD**

          An essential element of each of the Trustee's three claims against the Nominating

Committee Members is a properly pleaded underlying tort. *See Small v. Lorillard Tobacco Co.*,

94 N.Y.2d 43, 57 (1999) (requiring an "independent tort to provide a basis for liability" under a

concerted action theory); *Alexander & Alexander of N.Y., Inc. v. Fritzen*, 68 N.Y.2d 968, 968

(1986) ("Allegations of conspiracy are permitted only to connect the actions of separate

defendants with an otherwise actionable tort."); *Stanfield Offshore Leveraged Assets, Ltd. v.

Metro. Life Ins. Co.*, 883 N.Y.S.2d 486, 489 (App. Div. 1st Dep't 2009) (aiding and abetting

fraud requires "the existence of an underlying fraud"). Here, that tort is the alleged fraud of K

Road and some of its employees.

          As noted above and as set forth in K Road's brief, the underlying fraud claim is

not viable and is, in fact, utterly implausible. Accordingly, any aiding and abetting, civil

conspiracy, and/or concert of action claims based on that alleged fraud must likewise be

dismissed. *See, e.g.*, *Small*, 94 N.Y.2d at 57; *Vilar v. Rutledge*, 964 N.Y.S.2d 527, 528 (App.

Div. 1st Dep't 2013); *Linden v. Moskowitz*, 294 A.D.2d 114, 115 (App. Div. 1st Dep't 2002).

**B.    THE AIDING AND ABETTING FRAUD CLAIM (COUNT TWELVE) FAILS
BECAUSE THE TRUSTEE DOES NOT PLEAD *FACTS* SHOWING THAT THE
NOMINATING COMMITTEE MEMBERS HAD ACTUAL KNOWLEDGE OF
OR PROVIDED SUBSTANTIAL ASSISTANCE TO THE ALLEGED FRAUD**

         Even if K Road's underlying fraud has been properly pled (and it has not), the

Trustee's aiding and abetting claim still fails. To properly plead a claim for aiding and abetting

fraud under New York law,[25] the Trustee must allege:  "(1) the existence of an underlying fraud;

(2) knowledge of this fraud on the part of the aider and abettor; and (3) substantial assistance by

the aider and abettor in achievement of the fraud."  *Stanfield*, 883 N.Y.S.2d at 489.

Claims of aiding and abetting fraud are subject to the heightened pleading

requirements of Federal Rule of Civil Procedure 9(b).  *Rosner v. Bank of China*, 528 F. Supp. 2d

419, 426 (S.D.N.Y. 2007); *In re Jeweled Objects LLC*, Adversary No. 10-3198 (RDD), 2012 WL

3638006, at *8 (Bankr. S.D.N.Y. Aug. 22, 2012), *aff'd* 2013 WL 5229792 (S.D.N.Y. Sept. 17,

2013).  This means that the Trustee must allege his claim of aiding and abetting fraud with

"particularity" by setting forth the "who, what, when, where, and how" of the alleged aiding and

abetting.  *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 614 (S.D.N.Y. 2008), *aff'd* 347 F.

App'x 665 (2d Cir. 2009); *see* Fed. R. Civ. P. 9(b).  And where, as here, aiding and abetting fraud

is alleged against multiple defendants, the complaint must set forth with particularity each

defendant's allegedly wrongful acts.  *See Wiesner v. Willkie Farr & Gallagher*, 785 F. Supp. 408,

411 (S.D.N.Y. 1992) ("[W]hen fraud is alleged against multiple defendants, a plaintiff must

plead with particularity by setting forth separately the acts complained of by each defendant."

(citing *Zerman v. Ball*, 735 F.2d 15, 22 (2d Cir. 1984))); *see also Ellison v. Am. Image Motor

Co.*, 36 F. Supp. 2d 628, 640-41 (S.D.N.Y. 1999) (dismissing fraud claims for failure to identify

the particular acts of each defendant); *In re RSL COM Primecall, Inc.*, Adv. Proc. No. 03-2176

(ALG), 2003 WL 22989669, at *6 (Bankr. S.D.N.Y. Dec. 11, 2003).  The Trustee fails to satisfy

Rule 9(b) here.

---

[25]  The Amended Complaint alleges that the purported fraud was conceived and carried out in New York (Am.
Compl. ¶¶ 152, 214, 223, 234, 247, 254, 261, 268, 276, 293).  Accordingly, for purposes of this motion only, the
Nominating Committee Members and their Affiliated Transferee Defendants assume that New York law governs
the Trustee's claims, unless otherwise noted.  The Nominating Committee Members and their Affiliated
Transferee Defendants otherwise reserve any and all rights concerning choice of law.

### 1.      The Trustee's Allegations of Actual Knowledge Fail

Under New York law, a plaintiff must allege that an aiding and abetting defendant

had actual knowledge of the fraud.  *Rosner*, 528 F. Supp. 2d at 426; *see also Kolbeck v. LIT,*

*Am., Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998).

Allegations of constructive knowledge or reckless disregard for the truth are insufficient.  *See In*

*re Agape Litig.*, 773 F. Supp. 2d 298, 308, 310 (E.D.N.Y. 2011).  Plaintiffs must plead facts

sufficient to permit a "strong inference" of actual knowledge.  *Id.* at 308.

The Trustee's only allegation regarding the Nominating Committee Members'

knowledge of the alleged fraud is that they were provided with internal financial information not

available to the Independent Directors and which allegedly showed the falsity of the Projections.

(Am. Compl. ¶ 31).  This allegation—and the Trustee's entire theory that the Nominating

Committee Members had actual knowledge of a purported fraud—fails for a number of reasons.

### a.      Allegations of Fraud Cannot Be Made on Information and Belief

First, the allegation is made on "information and belief", and allegations of fraud

cannot be made on information and belief.  *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972)

("Rule 9(b) pleadings cannot be based upon information and belief."); *see also In re Agape*, 773

F. Supp. 2d at 316 (citing this principle in analyzing the actual knowledge element of an aiding

and abetting claim); *In re OldCar Co. LLC*, 435 B.R. 169, 191 (Bankr. S.D.N.Y. 2010).[26]  For

---

[26] There is an exception to this rule when the information is peculiarly within the opposing party's knowledge.  *See Segal*, 467 F.2d at 608.  And courts sometimes give bankruptcy trustees more leeway than other litigants in alleging fraud.  *In re RSL COM Primecall, Inc.*, Adv. Proc. No. 03-2176 (ALG), 2003 WL 22989669, at *6 (Bankr. S.D.N.Y. Dec. 11, 2003).  But these exceptions are inapplicable here because (1) the Trustee is not a trustee under the Bankruptcy Code, and (2) the Trustee has conducted extensive discovery, including against K Road, who produced more than 200,000 pages of documents relating to the Transaction.  (Objection of Certain Defs. to the Liquidating Trustee's Mot. to Unseal the Compl., Oct. 16, 2012, ¶ 10, Adv. Proc. No. 12-1879, [ECF No. 9]); s*ee In re OldCar Co.*, 435 B.R. at 192 (rejecting trustee's argument that it should be afforded a more relaxed pleading standard for intentional fraud claims where "there was a period in which Rule 2004 discovery was conducted that allowed access to numerous documents, as well as the depositions of many witnesses"); *see also In re RSL COM*, 2003 WL 22989669, at *6.  In any event, allegations made on information and belief must

this reason alone, the aiding and abetting claim must be dismissed.  *See Manela v. Gottlieb*, 784

F. Supp. 84, 87 & n.4 (S.D.N.Y. 1992) (dismissing fraud claims that were pleaded on

information and belief); *Schlansky v. United Merchs. & Mfrs., Inc.*, 443 F. Supp. 1054, 1063

(S.D.N.Y. 1977) (same).

### b.    The Amended Complaint Lacks the Required Particularity

Second, the allegation is far too vague to satisfy Rule 9(b).  Under Rule 9(b),

"[w]here plaintiffs contend defendants had access to contrary facts, they must specifically

identify the reports or statements containing this information."  *Novak v. Kasaks*, 216 F.3d 300,

309 (2d Cir. 2000); *In re AlphaStar Ins. Group Ltd.*, 383 B.R. 231, 261 (Bankr. S.D.N.Y. 2008).

Here, the Trustee fails to "specifically identify" anything that the Nominating Committee

Members allegedly received.  Nor does he explain how any such information conflicted with the

Projections.  The Trustee also does not allege that any of the Nominating Committee Members

had even *seen* the allegedly misleading documents provided to the lenders.  Instead, the Trustee

makes conclusory allegations that the Nominating Committee Members "approved and ratified"

the Transaction and "knew" the lenders received false information.  (Am. Compl. ¶ 31).  These

boilerplate allegations of actual knowledge fail.  *See Berman v. Morgan Keegan & Co. Inc.*, No.

10-CV-5866, 2011 WL 1002683, at *10 (S.D.N.Y. Mar. 14, 2011) (allegations of actual

knowledge insufficient where "the Complaint does not allege that [a broker/defendant] ever read

or reviewed [the alleged fraudulent] document or took any actions indicating that he understood

how the program was marketed to borrowers"), *aff'd* 455 F. App'x 92 (2d Cir. 2012); *Vogel v.

Sands Bros. & Co., Ltd.*, 126 F. Supp. 2d 730, 743 (S.D.N.Y. 2001) ("While plaintiffs contend

that defendant had access to facts that contradict these generally optimistic reports, other than by

---

be accompanied by a statement of the facts on which the belief is based.  *See Segal*, 467 F.2d at 608; *In re OldCar Co.*, 435 B.R. at 191.  The Trustee has not done that.

reference to plaintiffs' theory of [the alleged fraudulent] scheme, plaintiffs fail to 'specifically

identify the reports or statements containing this information.'" (quoting *Novak*, 216 F.3d at

309)).

### c.    The Nominating Committee Members Could Not Have Known of the Alleged Fraud Because They Invested Millions in the Loans

Next, the notion that the Nominating Committee Members had actual knowledge

of any fraud is implausible.  As described above, after receiving the proceeds from the

redemptions in the Transaction, the Nominating Committee Members and their affiliates turned

around and re-invested millions of dollars of their own capital in the Loans.  Any inference that

the Nominating Committee Members had actual knowledge of a fraudulent scheme, but

nonetheless invested in it, makes no sense and would lead only to the implausible conclusion that

the Nominating Committee Members defrauded themselves.  *See In re OldCar Co.*, 435 B.R. at

194-95 & n.21 (finding allegations of fraudulent intent implausible, in part because the

defendants made a $1.5 billion credit facility available to a company and made a direct

repayment of $920 million in intercompany debt after allegedly rendering the company

insolvent).

Finally, the Trustee fails to allege that the Nominating Committee Members had a

motive to aid K Road's alleged fraud.[27]  The Trustee alleges that the Nominating Committee

Members desired to "get cash out immediately" and then "reaped the benefits of the

[Transaction]" when they redeemed their equity units.  (Am. Compl. ¶¶ 89, 262).  Apart from

---

[27]    Some courts acknowledge that a plaintiff may plead a strong inference of actual knowledge through allegations of motive and opportunity to commit fraud.  *See Agape*, 773 F. Supp. 2d at 321; *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 426 (S.D.N.Y. 2007).  But motive and opportunity allegations are a method of pleading the scienter element of an underlying fraud claim, and courts recognize that the "actual knowledge element of a claim for aiding and abetting is a distinct requirement from the scienter required to allege the underlying fraud." *Agape*, 773 F. Supp. 2d at 308 (citing *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 442 (S.D.N.Y. 2010)).  Accordingly, there is reason to limit the significance of a defendant's motive to deceive in the analysis of whether that defendant had actual knowledge of the fraud.

being inaccurate (as discussed above, the Nominating Committee Members put cash back *in*),

these allegations merely reflect ordinary economic motives that are insufficient to justify an

inference of actual knowledge of fraud. *See, e.g.*, *In re Sharpe Int'l Corp.*, 281 B.R. 506, 516

(Bankr. E.D.N.Y. 2002) ("Courts have consistently found that allegations of ordinary economic

motives are insufficient to plead a strong financial motive to aid the fraud, and are not a

substitute for pleading actual knowledge of the primary wrongdoing."), *aff'd* 403 F.3d 43 (2d Cir.

2005).  Specifically, courts have held that "the sale of one's ownership of a business does not

raise an inference of fraud." *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs.*

*Co.*, 910 F. Supp. 913, 935 (S.D.N.Y. 1995) (defendants' sale of their interests in a business

during an LBO that allegedly rendered the company insolvent did not raise an inference of

fraudulent intent); *In re OldCar Co. LLC*, 435 B.R. at 192.  This principle is particularly apt here

since the lenders *required* the Loans to be used to make redemptions and pay dividends to the

equity holders.  (Am. Compl. ¶ 177).  Accordingly, the Nominating Committee Members' desire

to sell and their ultimate sale of their equity units do nothing to raise a strong inference of actual

knowledge of the alleged fraud.

### 2.      The Trustee's Allegations of Substantial Assistance Fail

The aiding and abetting claim also fails because the Trustee has not adequately

alleged "substantial assistance."  To plead substantial assistance under New York law, a plaintiff

must allege that "(1) a defendant affirmatively assists, helps conceal, or by virtue of failing to act

when required to do so enables the fraud to proceed, and (2) the actions of the aider/abettor

proximately caused the harm on which the primary liability is predicated." *Stanfield*, 883

N.Y.S.2d at 489; *see also Kolbeck*, 939 F. Supp. at 249 ("Aiding and abetting liability arises only

when plaintiffs' injury was 'a direct or reasonably foreseeable result' of the complained-of

conduct.").

17

### a.    Silence Cannot Constitute Substantial Assistance Because the Nominating Committee Members Had No Duty to Speak

The crux of the Trustee's conclusory allegations against the Nominating

Committee Members is that they knew about an alleged fraud but failed to disclose it.  (*See* Am.

Compl. ¶ 31).  Silence, however, cannot constitute substantial assistance absent the existence of a

fiduciary duty owed to the plaintiffs.  *See Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12

N.Y.3d 553, 562 (2009); *Stanfield*, 883 N.Y.S.2d at 489-90 (no substantial assistance absent

fiduciary duty where despite allegations of ostensibly active involvement, the "crux" of the claim

was a failure to disclose a fraud); *see also Kolbeck*, 939 F. Supp. at 247 ("[I]naction constitutes

substantial assistance only when an 'independent duty to act was owed to the defrauded

investor.'" (citation omitted)).  The Trustee has not pled that the Nominating Committee

Members owed any fiduciary duty to the Assignors.[28]  Accordingly, the Trustee has failed to

allege substantial assistance.

### b.    The Trustee Has Not Alleged Substantial Assistance with the Requisite Particularity

#### (i)    The Trustee fails to identify the specific actions of each Nominating Committee Member

The Trustee's "substantial assistance" allegations also fall short of Rule 9(b)'s

pleading requirements.  As an initial matter, the Amended Complaint improperly groups together

---

[28]  Nor could he.  Under both Delaware and New York law, fiduciary relationships are found to exist only where there is a special relationship of trust and confidence between the parties.  *See Antares Mgmt. LLC v. Galt Global Capital, Inc.*, No. 12 Civ. 6075, 2013 WL 1209799, at *10 (S.D.N.Y. Mar. 22, 2013) (fiduciary relationship under New York law exists where "one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first"); *Metro Ambulance, Inc. v. E. Med. Billing, Inc.*, Civ. A. No. 13929, 1995 WL 409015, at *2 (Del. Ch. July 5, 1995) (fiduciary relationship under Delaware law exists where "one person reposes special trust in and reliance on the judgment of another or where a special duty exists on the part of one person to protect the interests of another" (citation omitted)).  Here, there are no allegations to support such a relationship.  Indeed, there are no allegations that the Nominating Committee Members ever communicated with any of the Assignors at any time or in any way.  Accordingly, there is no fiduciary duty and no aiding and abetting liability based on silence.  *See Albion Alliance Mezzanine Fund, L.P. v. State Street Bank and Trust Co.*, 797 N.Y.S.2d 699, 704-05 (Sup. Ct. N.Y. Cnty. 2003) (refusing to find aiding and abetting liability based on inaction where the defendant "did not even communicate with them [the plaintiffs] in connection with the Second Note Closing"), *aff'd*, 767 N.Y.S.2d 619 (1st Dep't 2003).

18

the conduct of all the (unaffiliated and completely independent) Nominating Committee

Members without even attempting to allege with particularity the substantial assistance of each

Nominating Committee Member.  *See Filler v. Hanvit Bank*, No. 01 Civ. 9510, 2003 WL

22110773, at *3 (S.D.N.Y. Sept. 12, 2003) (dismissing aiding and abetting and conspiracy

claims that "do not make allegations with respect to each defendant, but instead refer only

generally to the defendants as 'the Banks' or 'the Korean Banks'"); *Ellison*, 36 F. Supp. 2d at 640-

41 (dismissing fraud claims for failure to identify the particular acts of each defendant).  This

group pleading deficiency is particularly egregious here, where the Nominating Committee had

no authority other than to nominate the Independent Directors of EBG and to set the

compensation for the "initial" board.  (*See* Am. Compl. ¶ 30; EBG LLC Agreement, § 5.2(b) and

Schedule C).

**(ii)      The allegations are vague, conclusory, and wholly insufficient**

Moreover, the allegations that the Nominating Committee Members "approved,"

"ratified," "urg[ed]," "consented to," and "blessed" the Transaction and K Road's conduct, (Am.

Compl. ¶¶ 31, 166, 261, 263), are unsupported by particularized facts.  Allegations of substantial

assistance far more particular than those alleged by the Trustee have been held to be

insufficient.[29]  The Trustee fails to identify which Nominating Committee Members (and which

individuals associated with each of the Members) allegedly encouraged, consented to, and

blessed K Road's conduct, let alone where, when, and how such consent and encouragement

were provided.

---

[29]  *See In re Agape*, 773 F. Supp. 2d at 323-24 (finding the following allegation insufficient under Rule 9(b):  "[The company's] default Controller . . . time and again, helped hold off angry investors and brokers, in order to forestall the scheme's collapse and discovery.  She assuaged their concerns and falsely propped up the legitimacy of Agape.  To do so, she made false and misleading statements with the goal of persuading investors to keep their money with Agape."); *see also Albion*, 797 N.Y.S.2d at 704-05 (failure to plead substantial assistance against a bank when the bank encouraged the fraudster to borrow additional money and then gave the formal approval necessary to allow the borrowing to occur).

c.      **The Trustee Fails to Allege Proximate Cause**

The Trustee's substantial assistance allegations also fail to allege that the

Nominating Committee Members' conduct was the proximate cause of the Assignors' injuries.

*See Stanfield*, 883 N.Y.S.2d at 489 (aider and abettor's conduct must have proximately caused

plaintiff's damages).

The Second Circuit has held that "[a]wareness and approval, standing alone, do

not constitute substantial assistance." *Armstrong v. McAlpin*, 699 F.2d 79, 92 (2d Cir. 1983)

(president of investment advisory firm who "was aware" and "approved" of his client's alleged

churning scheme did not provide substantial assistance).  Here, the Trustee's allegations against

the Nominating Committee Members amount to, at most, "awareness and approval" of the

alleged fraud.  There is no allegation that the Nominating Committee Members were involved in

creating or disseminating any of the allegedly misleading documents.  Where, as here, the

underlying fraud consists of misrepresentations in documents, an aiding and abetting defendant

"must be alleged to have given substantial assistance to the making and dissemination of that

document." *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 371

(S.D.N.Y. 2007); *see also Morin v. Trupin*, 711 F. Supp. 97, 113 (S.D.N.Y. 1989).[30]

Furthermore, even if the Trustee had alleged that the Nominating Committee

Members' conduct was the proximate cause of the Assignors' alleged injuries (which he did not),

the Nominating Committee Members' alleged consent to the Transaction was too remote to be a

proximate cause of the Assignors' injuries.  The Trustee claims that investments in, and

extensions of credit to, the Debtors were rendered "worthless" in bankruptcy.  (*See* Am. Compl.

---

[30]   This rule is based on the proximate cause requirement in assessing substantial assistance.  If a plaintiff allegedly
relied to his detriment on misleading documents, a defendant that did not assist in preparing or disseminating
those documents cannot be said to have proximately caused the plaintiff's losses.  *Fraternity Fund*, 479 F. Supp.
2d at 371.

¶ 205).  But the Debtors' did not file their Chapter 11 petitions until nearly four years after the Transaction closed.  Moreover, the Debtors—allegedly insolvent—were acquired in June 2007 at a purchase price of over $1.2 billion and for an "enterprise valuation" of over $3 billion.  (*See* K Road Form S-1, at 3; US Power Form S-1, at F-34-35).  Only after US Power managed the Debtors for over three years and a severe recession disrupted the energy markets, did the Debtors require the protections of Chapter 11.  (*See* Hunter Decl. ¶ 18, at 8 (noting that "[o]ver the last several years, low fuel prices, eroding demand and a significant surplus of supply have put downward pressure on" the energy markets).[31]

These facts fatally undermine the notion that the Transaction, let alone the Nominating Committee Members' alleged involvement in it, had anything to do with the Assignors' losses.  *See MFS/Sun Life*, 901 F. Supp. at 944 ("That the company remained viable so long after the LBO strongly suggests that its ultimate failure cannot be attributed to inadequacy of capital as of the date of the buyout."); *see also First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2d Cir. 1994) (failure to allege proximate cause where there was a "substantial period between the alleged fraud and [the plaintiff's] loss, coupled with the concurrence of that loss with the real estate market crash"); *OldCar Co.*, 435 B.R. at 193 (holding that the "involvement of sophisticated and independent market participants," including the investment by a third party of $7 billion in a close affiliate of the allegedly insolvent entity, "shows the implausibility of the allegations of intentional fraud").  Under these circumstances,

---

[31]  This Court can take judicial notice of the fact that the Debtors filed their Chapter 11 petitions in the wake of the global economic crisis.  *See, e.g., In re Tarragon Corp. Sec. Litig.*, 07 Civ. 7972, 2009 U.S. Dist. LEXIS 60160, at *35-37 (S.D.N.Y. Mar. 27, 2009) (taking judicial notice that an event "occurred early in the deterioration of the American real estate and credit markets").

the Trustee has failed to plead a plausible claim that the Nominating Committee Members'

conduct proximately caused the Assignors' injuries.[32]

## C.    THE TRUSTEE HAS NOT ADEQUATELY ALLEGED A CLAIM FOR CIVIL CONSPIRACY (COUNT THIRTEEN)

"Under New York law, there is no independent cause of action for civil

conspiracy." *DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 659

(S.D.N.Y. 2011) (citation omitted).  Instead, as discussed above, civil conspiracy claims are

available only if a plaintiff first sufficiently alleges an underlying tort.  *See Alexander &*

*Alexander of N.Y.*, 68 N.Y.2d at 968.  If an underlying tort is properly plead—which has not

occurred here—the elements of a civil conspiracy claim are "(1) an agreement between two or

more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional

participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Bigio*

*v. Coca-Cola Co.*, 675 F.3d 163, 176 (2d Cir. 2012).

To plead these elements, mere conclusory statements will not suffice.  "[T]o

survive a motion to dismiss, a complaint must contain more than general allegations in support of

the conspiracy.  Rather, it must allege the specific times, facts, and circumstances of the alleged

conspiracy." *DDR Constr. Servs.*, 770 F. Supp. 2d at 659 (internal quotation marks and citation

omitted).  Where a conspiracy claim fails to specify which specific defendants agreed, and when

and where they did so, the claim will be dismissed.  *See Twombly*, 550 U.S. at 565 n.10 ("[T]he

complaint here furnishes no clue as to which of the four ILECs (much less which of their

employees) supposedly agreed, or when and where the illicit agreement took place."); *In re*

---

[32]  Because the approval of the Nominating Committee was not required to close the Transaction, the "Nominating Committee" was not even a "but-for" cause of the transaction, which would, in any event, be insufficient to find aiding and abetting liability.  *Armstrong*, 699 F.2d at 92 ("[A] 'but-for' concept of proximate cause will not satisfy this requirement [of substantial assistance]."); *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001) ("But-for causation is insufficient; aider and abettor liability requires the injury to be a direct or reasonably foreseeable result of the conduct.").

*Operations NY LLC*, 490 B.R. 84, 103-04 (Bankr. S.D.N.Y. 2013) (dismissing civil conspiracy claim because it improperly "'group pleads' the conspiracy charge lumping the defendants together").[33]  The Trustee's conspiracy claim does not meet these pleading requirements for at least five reasons.

### 1.    The Trustee Does Not Identify Which Nominating Committee Members Participated in the Alleged Conspiracy

*First*, the Amended Complaint improperly groups the Nominating Committee Members together, furnishing "no clue as to which of the [defendants] (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place." *Twombly*, 550 U.S. at 565 n.10; *see also In re Operations NY LLC*, 490 B.R. at 103-04.  Having failed to do so, the conspiracy claim must be dismissed.

### 2.    The Trustee Provides No Details Regarding an Agreement to Defraud Investors

*Second*, the Trustee fails to supply a factual basis for a conscious agreement among the defendants.  The most the Trustee alleges is that there were unspecified "emails, telephone calls, and in-person planning sessions," apparently involving the Nominating Committee Members and the other alleged co-conspirators.  (Am. Compl. ¶ 279).  These are the

---

[33]    While the Second Circuit declined to apply Rule 9(b) in a RICO conspiracy case—*see Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990)—many courts in the Second Circuit have subsequently applied Rule 9(b) to conspiracy claims.  *See, e.g., HICA Educ. Loan Corp. v. Bolte*, No.11-cv-6404, 2012 WL 423361, at *8 (S.D.N.Y. Feb. 10, 2012) (dismissing claims of fraud and conspiracy to defraud because the plaintiffs failed "to state these claims with particularity, as required by Rule 9(b)"); *Moody v. Morris*, 608 F. Supp. 2d 575, 582 (S.D.N.Y. 2009); *Fierro v. Gallucci*, No. 06-CV-5189, 2008 WL 2039545, at *16 (E.D.N.Y. May 12, 2008) ("Plaintiffs fail to allege specific facts regarding this alleged conspiracy that survive Rule 9(b).") *Filler v. Hanvit Bank*, No 01 Civ. 9510, 2003 WL 22110773, at *3 (S.D.N.Y. Sept. 12, 2003); *Spira v. Curtin*, No. 97 Civ. 2637 (TPG), 2001 WL 611386, at *3 (S.D.N.Y. June 5, 2001).  Further, although the *Hecht* court did not apply Rule 9(b), it made clear that plaintiffs still must allege "some factual basis for a finding of a conscious agreement among the defendants."  *Hecht*, 897 F.2d at 26 n.4.

23

sort of vague and conclusory allegations courts routinely find insufficient to state a claim for civil conspiracy.[34]

### 3. The Trustee Alleges, At Most, Knowing Acquiescence as to a Non-Fiduciary, Which Is Insufficient

*Third*, as with the Trustee's aiding and abetting claim, the thrust of the conspiracy claim is that the Nominating Committee Members knew about the fraud but failed to disclose it. But as with aiding and abetting, such allegations are insufficient to state a claim for conspiracy absent a fiduciary duty. *Transp. Workers Union of Am. Local 100 v. Schwartz*, 794 N.Y.S.2d 308, 309-10 (App. Div. 1st Dep't 2005) ("The civil conspiracy claims against defendant Ross . . . were properly dismissed inasmuch as he was a non-fiduciary against whom nothing more than knowing acquiescence was alleged therein . . . ."); *see also Schwartz v. Soc'y of the N.Y. Hosp.*, 605 N.Y.S.2d 72, 74 (App. Div. 1st Dep't 1993) (dismissing conspiracy claim for failure to allege "independent culpable behavior" by alleged co-conspirators).

### 4. The Alleged Conspiracy is Implausible

*Fourth*, the Trustee's allegations of a conscious agreement to defraud are implausible. As discussed above, the Trustee has failed to adequately allege that the Nominating Committee Members had actual knowledge of the fraud. Without knowledge of the fraud, it is "impossible" to find an agreement to commit that fraud. *In re Monahan Ford Corp. of Flushing*, 340 B.R. 1, 36 (Bankr. E.D.N.Y. 2006). Further, because the Nominating Committee Members

---

[34] *See, e.g., Atl. Int'l Movers LLC v. Ocean World Lines, Inc.*, 914 F. Supp. 2d 267, 279-80 (E.D.N.Y. 2012) (dismissing conspiracy claim that "largely fails to attribute specific actions to any of the parties and makes no specific allegations supporting the existence of an agreement between them"); *DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 659-60 (S.D.N.Y. 2011) (dismissing conspiracy claim that "does not state any facts indicating the what, when, where, and how of the conspiracy"); *Campbell v. Thales Fund Mgmt. LLC*, No. 10 Civ. 3177, 2010 WL 4455299, at *7 (S.D.N.Y. Oct. 12, 2010) (dismissing conspiracy claim as "wholly conclusory"); *see also Albion*, 797 N.Y.S.2d at 705, 707 (rejecting conspiracy claim where plaintiffs alleged that "the Bank conspired with Sharp at the November 30, 1998 meeting by encouraging Sharp to find investors to pay off the loan, investors whom the Bank knew Sharp would solicit with falsified financial information").

invested millions of dollars in the Loans, an agreement to commit a fraud here would have meant an agreement to defraud themselves—a nonsensical allegation.  The Amended Complaint also makes the additional, contradictory, and implausible allegation that the Nominating Committee Members conspired with Harbinger, but then elsewhere alleges that Harbinger and K Road kept Harbinger's existence secret from the Nominating Committee.  (Am. Compl. ¶ 289).  It is hard to imagine how the Nominating Committee Members could have conspired with an entity they did not know existed.

  **5.**  **The Conspiracy Claim Is Duplicative of the Aiding and Abetting Fraud Claim**

    *Finally*, the conspiracy claim must be dismissed because it is duplicative of the aiding and abetting claim.  "Courts agree that civil conspiracy claims that are duplicative of other claims, including aiding and abetting claims, should be dismissed."  *In re Allou Distributors, Inc.*, 446 B.R. 32, 60-61 (Bankr. E.D.N.Y. 2011) (dismissing civil conspiracy claim as duplicative of aiding and abetting fraud claim); *see also Amusement Indus., Inc. v. Buchanan Ingersoll & Rooney, P.C.*, 11 Civ. 4416, 2012 WL 1193353, at *8 (S.D.N.Y. Apr. 10, 2012) (dismissing conspiracy claim as duplicative of aiding and abetting claim).  Here, the Trustee's allegations of conspiracy are materially identical to his aiding and abetting allegations.  (*Compare* Am. Compl. ¶¶ 261-63, *with* Am. Compl. ¶¶ 269-71).  Accordingly, the conspiracy claim must be dismissed.

  **D.**  **THE TRUSTEE'S CONCERT OF ACTION CLAIM (COUNT FOURTEEN) FAILS FOR ADDITIONAL REASONS**

    As with civil conspiracy claims and aiding abetting claims, there must be an "independent tort to provide a basis for liability" under a concerted action theory.  *Small*, 94 N.Y.2d at 57.  If there is an independent tort—which there is not here—a plaintiff must allege that the defendants had "an understanding, express or tacit, to participate in a common plan or

design to commit a tortious act." *Rastelli v. Goodyear Tire Co.*, 79 N.Y.2d 289, 295 (1992)

(citations omitted). Thus, like a conspiracy claim, a concert of action claim requires an

"unlawful agreement." *Cresser v. Am Tobacco Co.*, 174 Misc. 2d 1, 6-7 (Sup. Ct. N.Y. Cnty.

1997) ("[A]n unlawful agreement is the gravamen of both concerted action and conspiracy . . .

."). In addition, it is "essential" for a concert of action claim that each defendant have acted

"tortiously." *Rastelli*, 79 N.Y.2d at 295.

For the same reasons that the Trustee fails to allege an agreement in the

conspiracy context, he fails to allege an agreement in the concert of action context. *See Cresser*,

174 Misc. 2d at 6-7. Similarly, the Trustee's concert of action claim fails because he has failed to

allege the Nominating Committee Members' actual knowledge of the alleged fraud. *See Pittman*

*by Pittman v. Grayson*, 149 F.3d 111, 122-23 (2d Cir. 1998) (concert of action requires that the

defendant "know the wrongful nature of the primary actor's conduct" (citation omitted)).

Accordingly, the Trustee has plainly not alleged that the Nominating Committing Members acted

"tortiously" and this claim should be dismissed.

## E. THE CLAIMS AGAINST THE NOMINATING COMMITTEE MEMBERS ARE TIME BARRED

### 1. The Trustee is Not Entitled to the Benefit of New York's Six-Year Statute of Limitations

For the reasons set forth in the Moving Defendants' Brief—which the Nominating

Committee Members incorporate by reference—the Trustee has failed to show that, under New

York's borrowing statute, New York's six year statute of limitations for fraud applies.[35] Under

---

[35] New York's statute of limitations for fraud is the greater of six years from the time the claim accrued or two years from the time the plaintiff "discovered the fraud, or could with reasonable diligence have discovered it." C.P.L.R. § 213(8). This statute of limitations also applies to claims of aiding and abetting fraud, conspiracy to defraud, and concert of action based on fraud. *See Malone v. Bayerische Hypo-Und Vereins Bank AG*, Nos. 08 Civ. 7277, 09 Civ. 3676, 2010 WL 391826, at *4 (S.D.N.Y. Feb. 4, 2010) (noting that the six year statute of limitations governs "claims for fraud, conspiracy to commit fraud, aiding and abetting fraud and fraudulent concealment").

the borrowing statute, when a non-resident plaintiff sues on a claim that accrued outside New

York, courts apply the shorter statute of limitations of either New York or the state where the

cause of action accrued.  C.P.L.R. § 202; *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d

Cir. 1998).[36]  Here, the claims against the Nominating Committee Members accrued in the

Assignors' states of residence because those claims involve "purely economic" injury.  *Global*

*Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 529 (1999).[37]  Many other states have shorter statutes

of limitations for fraud than New York.  *See, e.g.*, Del. Code Ann. tit. 10, § 8106 (three years);

Mass. Gen. Laws ch. 260, § 2A (three years).  The Trustee, as plaintiff, bears the burden of

pleading his entitlement to New York's longer statute of limitations.  *See Katz v. Goodyear Tire*

*and Rubber., Co.*, 737 F.2d 238, 243 (2d Cir. 1984); *Sompo Japan Ins. Co. of Am. v. Travelers*

*Indem. Co.*, No. 118223/2003, 2004 WL 5487929, at *1 (N.Y. Sup. Ct. July 6, 2004) (placing

burden on plaintiff on a motion to dismiss).  He has not done so.  Thus, his claims against the

Nominating Committee Members—including at the time the Original Complaint was filed—are

deficient and time-barred.

2. **The Trustee's Claims Are Time Barred Under New York's Statute of Limitations**

Even if New York's six year statute of limitations applies, all the Trustee's claims

against the Nominating Committee Members are still time-barred.  The Trustee's claims against

the Nominating Committee Members accrued at the latest in December 2006, when the

Transaction closed.  *See BRS Assocs. LP v. Dansker*, 246 B.R. 755, 773 (S.D.N.Y. 2000) (fraud

---

[36] The question of whether to apply another state's statute of limitations pursuant to the borrowing statute is separate from the question of which state's substantive law applies.  *Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 528 (1999).

[37] *See also RA Global Servs., Inc. v. Avicenna Overseas Corp.*, 817 F. Supp. 2d 274, 281-82, 289 (S.D.N.Y. 2011) (claim for conspiracy to defraud accrued where plaintiff resided and was barred by that state's shorter statute of limitations); *Gordon & Co. v. Ross*, 63 F. Supp. 2d 405, 408 (S.D.N.Y. 1999) (claim for fraud accrued where plaintiff resided); *Met. Life Ins. Co. v. Morgan Stanley*, 2013 Slip. Op. 31544(u), 2013 WL 3724938, at *6-7 (N.Y. Sup. Ct. N.Y. Cnty. 2013) (claims for fraud, aiding and abetting fraud, and fraudulent inducement all accrued where plaintiffs resided).

claims accrue when "plaintiffs enter an agreement to invest or lend funds as a consequence of fraudulent inducement").  The Amended Complaint, however, was not filed until August 1, 2013, well after the six year mark had passed.  And as discussed below, the Amended Complaint does not relate back to the Original Complaint, the discovery rule does not help the Trustee, and any equitable doctrines are inapplicable.  Accordingly, the claims are untimely and must be dismissed.

        a.      **The Amended Complaint's New Allegations Against the Nominating Committee Members Do Not "Relate Back" to the Original Complaint**

In the Second Circuit, "[f]or a newly added action to relate back, the basic claim must have arisen out of the conduct set forth in the original pleading." *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (internal quotation marks and citation omitted); *see* Fed. R. Civ. P. 15(c).  An amendment does not relate back if the new claims "are based on an 'entirely distinct set' of factual allegations," even if the amended complaint "tracks the legal theory of the first complaint." *Slayton*, 460 F.3d at 228.  The test for relation back is "whether the original complaint gave the defendant fair notice of the newly alleged claims." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 815 (2d Cir. 2000) (citation omitted); *see In re 360networks (USA) Inc.*, 367 B.R. 428, 434 (Bankr. S.D.N.Y. 2007) (no relation back for additional preference claims where the original complaint alleged no facts about the relationship between the debtor and the defendant, failed to identify specific transfers, and did not mention a relevant supply agreement).

Here, the Amended Complaint's claims against the Nominating Committee Members do not relate back to the Original Complaint because these new claims arise from a new set of operative facts—the Nominating Committee Members' alleged active involvement in K Road's purported plan to defraud EBG's and Boston Generating's lenders.  The facts alleged in the Original Complaint do not assert any relationship whatsoever between the Nominating

28

Committee Members, K Road, and/or any of the other aiding and abetting or conspiracy defendants. In fact, the Original Complaint does not make a single reference to the "Nominating Committee" or to the Nominating Committee's role in EBG. The Nominating Committee Members were named in the Original Complaint only as individual, passive recipients of the allegedly fraudulent transfers. (*See* Original Complaint, ¶¶ 50, 52, 53, 55, 64-65, Ex. A). Under these circumstances, the Original Complaint failed to give "fair notice" and the Amended Complaint does not relate back.

      **b.**    **The Trustee Is Not Entitled to the Benefit of the Discovery Rule with Respect to the Claims Against the Nominating Committee Members**

Under New York's discovery rule, a claim for fraud is timely if brought within two years of the time the plaintiff "discovered the fraud, or could with reasonable diligence have discovered it." C.P.L.R. 213(8). When the discovery rule period begins to run "turns upon whether a person of ordinary intelligence possessed knowledge of facts from which the fraud could be reasonably inferred." *Ghandour v. Shearson Lehman Bros. Inc.*, 624 N.Y.S.2d 390, 392 (App. Div. 1st Dep't 1995) (citing *Erbe v. Lincoln Rochester Trust Co.*, 3 N.Y.2d 321, 326 (1957)); *see also BRS Assocs.*, 246 B.R. at 772-73. "The test as to when fraud should with reasonable diligence have been discovered is an objective one." *BRS Assocs.*, 246 B.R. at 772.

Courts routinely find that substantial losses on investments, and bankruptcy filings in particular, place potential plaintiffs on inquiry notice of potential fraud. *See BRS Assocs.*, 246 B.R. at 773 (bankruptcy filing placed plaintiffs on inquiry notice of potential fraud); *Gutkin v. Siegal*, 926 N.Y.S.2d 485, 486 (App. Div. 1st Dep't 2011) (plaintiff investor was on inquiry notice of fraud "when he recognized that his investment returns were significantly less than expected"); *Ballhaus v. Morgan Guar. Trust Co.*, 648 N.Y.S.2d 578, 578 (App. Div. 1st Dep't 1996) (bankruptcy filing put plaintiff investors on inquiry notice of the alleged fraud);

29

*ESBE Hldgs., Inc. v. Vanquish Acquisition Partners, LLC*, No. 603862/05, 2006 WL 6319829

(N.Y. Sup. Ct. N.Y. Cnty. Nov. 20, 2006) ("In the investment context, a party's awareness of

substantial losses or of facts that indicate the falsity of a material representation constitute

constructive or inquiry notice of the fraud." (citing cases)), *aff'd* 858 N.Y.S.2d 94 (App. Div. 1st

Dep't 2008).

        Here, the discovery rule period began to run, at the latest, at the time of the

bankruptcy petition in August 2010, nearly *three* years before the Amended Complaint was filed.

Even before that, the Amended Complaint makes clear that the Debtors were in financial

distress.  By September 2008, the Debtors retained restructuring advisors and by mid-2009, they

were telling their lenders that a default was likely and that the Second Lien and Mezzanine debt

should be converted into equity.  (Am. Compl. ¶ 144).  Moreover, the Nominating Committee's

existence was no secret.  Indeed, the EBG LLC Agreement specifically identified the

Nominating Committee Members, (*see* EBG LLC Agreement, Schedule B), and delivery of a

copy of that agreement was a condition to closing in each of the Credit Agreements.  (*See* First

Lien Credit Agreement, § 3.01(a)(ix)(B); Second Lien Credit Agreement, § 3.01(a)(ix)(B);

Mezzanine Credit Agreement, § 3.01(a)(v)(B)).  These facts make plain that the Trustee's claims

against the Nominating Committee were brought well after the two year discovery rule period

expired.

        **c.**      **The Trustee Is Not Entitled to the Benefit of Equitable Tolling**

        The doctrine of equitable tolling applies only to federal causes of action and is not

available to common law claims—like those against the Nominating Committee Members—

under New York law.  *Von Hoffmann v. Prudential Ins. Co.*, 202 F. Supp. 2d 252, 264 (S.D.N.Y.

2002) ("The doctrine of equitable tolling does not apply to these state law claims, as the doctrine

30

only tolls the statute of limitations with regard to federally created causes of action." (citations

omitted)).[38]

While equitable *estoppel* applies in New York, it requires an affirmative

misrepresentation by the defendant, unless the defendant has a fiduciary duty to the plaintiff.  *See*

*Zumpano v. Quinn*, 849 N.E.2d 926, 930 (N.Y. 2006).  The Trustee has alleged neither an

affirmative representation by any Nominating Committee Member nor a fiduciary duty owed by

any of them to the Assignors.  Accordingly, he cannot take advantage of that doctrine.

Even if equitable tolling did apply, the Trustee fails to plead the requisite

elements.  Equitable tolling requires a plaintiff to "plead with particularity (1) the wrongful

concealment by the defendant of its actions, (2) the failure by the plaintiff to discover the

operative facts underlying the action within the limitations period, and (3) the plaintiff's due

diligence to discover the facts."  *Cole v. Miraflor*, 02 Civ. 9981, 2006 WL 457817, at *7

(S.D.N.Y. Feb. 23, 2006); *see also In re The Mediators*, 190 B.R. 515, 524 (S.D.N.Y. 1995),

*aff'd* 105 F.3d 822 (2d Cir. 1997).

The wrongful concealment element is subject to the requirements of Rule 9(b) and

requires plaintiffs to identify "specifically which of the individual defendants committed . . . acts

of concealment."  *O'Brien v. Nat'l Property Analysts Partners*, 719 F. Supp. 222, 232 (S.D.N.Y.

1989); *see also In re The Mediators*, 190 B.R. at 525 ("A plaintiff cannot point to the deceptive

practices of one defendant, and demand equitable tolling as to all.").  The plaintiff must also

allege that each defendant "took affirmative steps to prevent the plaintiff's discovery of his claim

or injury or that the wrong itself was of such a nature as to be self-concealing."  *In re The*

---

[38] *See also Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*, No. 98 Civ. 4960 (MBM), 1999 WL 558141, at *4. n.4
(S.D.N.Y. July 30, 1999); *Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 747 F. Supp. 922, 943
(S.D.N.Y. 1990); *Shared Commc'ns Servs. of ESR, Inc. v. Goldman, Sachs & Co.*, 832 N.Y.S.2d 32, 32 (App.
Div. 1st Dep't 2007).

*Mediators*, 190 B.R. at 525 (internal quotation marks and citation omitted).  Here, as discussed

above, the Trustee fails to identify any specific act of any Nominating Committee Member.

Moreover, the Trustee makes no effort to explain how anything the Nominating Committee

allegedly did was "self-concealing."  In fact, the Trustee does not even mention the Nominating

Committee in the section of the Amended Complaint relating to equitable tolling.  (*See* Am.

Compl. ¶ 294-96).  Accordingly, he has failed to plead entitlement to that doctrine.

## F.    COUNTS ONE THROUGH SIX AGAINST THE NOMINATING COMMITTEE MEMBERS AND THE AFFILIATED TRANSFEREE DEFENDANTS AS RECIPIENTS OF THE ALLEGED FRAUDULENT TRANSFERS MUST BE DISMISSED

For the reasons set forth in the Moving Defendants' Brief—which the Nominating

Committee Members and the Affiliated Transferee Defendants join in full and incorporate by

reference—the Trustee's claims in Counts One through Six must be dismissed.

Further, any attempt by the Trustee to argue that his conclusory and implausible

allegations that the Nominating Committee Members aided or conspired in K Road's alleged

fraud somehow deprive the Nominating Committee Members of the § 546(e) safe harbor

protections would be meritless.  In narrow circumstances—where transferees have actual

knowledge of an underlying Ponzi scheme and the associated sham securities transactions—

courts have held the § 546(e) safe harbor to be unavailable.  *Sec. Investor Protection Corp. v.*

*Bernard L. Madoff Inv. Sec. LLC*, No. 12 MC 115, 2013 WL 1609154, at *3-4 (S.D.N.Y. Apr.

15, 2013) ("*Cohmad*"); *In re Arbco Capital Mgmt., LLP*, --- B.R. ----, 2013 WL 5346090, at *7-8

(Bankr. S.D.N.Y. Sept. 26, 2013).[39]  Those circumstances are not present here.

---

[39] While § 546(e) protects "settlement payments" and transfers in connection with "securities contract[s]," Ponzi schemes by nature involve only *fake* securities transactions; thus, transferee defendants with actual knowledge of the underlying Ponzi scheme cannot claim to have received any "settlement payments" or transfers in connection with a "securities contract" because they knew no securities transactions occurred.  *See Cohmad*, 2013 WL 1609154, at *3-4.  Thus, in order to take advantage of this rule, the Trustee must allege that "the transferee had actual knowledge that there were *no actual securities transactions being conducted*."  *Id.* at *4 (emphasis added).

First, the Transaction is not part of a Ponzi scheme.  Indeed, there is no question that the redemptions and dividend payments actually took place, nor can there be any real question that such transactions qualify as "settlement payments" or transfers in connection with a "securities contract."  (*See* Moving Defendants' Brief at 24-31.)  Accordingly, the Nominating Committee Members are entitled to the § 546(e) safe harbor.

Second, the Trustee does not (and cannot) sufficiently allege that any Nominating Committee Member had actual knowledge of the alleged fraud.  As discussed in detail above, the Trustee's allegations of the Nominating Committee Members' actual knowledge are inadequate.  In addition, both *Cohmad* and *Arbco* are readily distinguishable because they involved much stronger, more particularized allegations of actual knowledge of fraud than this case.

In *Cohmad*, for instance, the trustee sufficiently alleged that the defendant had actual knowledge of and actively participated in the underlying Ponzi scheme.  *Cohmad*, 2013 WL 1609154, at *6.  The *Cohmad* complaint alleged, among other things, that Cohmad and Madoff Securities were "closely intertwined both personally and professionally;" Cohmad shared office space, a computer network, and utilities with Madoff Securities; Cohmad's employees were paid commission based on the amount of net cash in the accounts, not based on the *purported* net assets in the accounts; and one of Cohmad's executives directed Madoff to "execute" back-dated trades in order to show "fictitious gains and losses in almost exact dollar amounts requested."  *Cohmad*, 2013 WL 1609154, at *5-6.

In *Arbco*, the trustee alleged that the defendant-broker had actual knowledge of the Ponzi scheme because, in contravention of its fiduciary duties and applicable securities regulations, the broker referred new investors to the Ponzi scheme, ignored "red flags," and allowed the Ponzi scheme's perpetrator to place speculative trades without putting any money

33

down, maintaining a positive margin account balance, or providing required financial

disclosures. *Arbco*, 2013 WL 5346090, at *3, *8. The Trustee's allegations here are nothing like

the allegations in *Cohmad* and *Arbco* and are plainly insufficient to deprive the Nominating

Committee Members of the protections provided in § 546(e).

**IV.**

**<u>CONCLUSION</u>**

For the reasons set forth above, Counts One through Six of the Trustee's

Amended Complaint asserted against the Nominating Committee Members and the Affiliated

Transferee Defendants and Counts Twelve through Fourteen of the Trustee's Amended

Complaint asserted against the Nominating Committee Members should be dismissed with

prejudice.  The Nominating Committee Members and the Affiliated Transferee Defendants

should also be awarded such other and further relief as the Court deems just and proper.


Dated:    New York, New York
          November 1, 2013


                              SCHULTE ROTH & ZABEL LLP

                              By:   /s/ David M. Hillman
                              Adam C. Harris
                              David M. Hillman
                              William H. Gussman, Jr.
                              Erik Schneider

                              919 Third Avenue
                              New York, New York 10022
                              Telephone: (212) 756-2000
                              Facsimile: (212) 593-5955
                              E-mail:Adam.Harris@srz.com
                                     David.Hillman@srz.com
                                     Bill.Gussman@srz.com
                                     Erik.Schneider@srz.com

                              *Counsel for Anchorage Capital Master Offshore,
                              Ltd., Stonehill Institutional Partners, L.P.,
                              Anchorage Capital Group, L.L.C. f/k/a Anchorage
                              Advisors, LLC, Anchorage Capital Master Offshore
                              II, Ltd., Stonehill Capital Management LLC, and
                              Boston Generating Offshore Holdings, Ltd.*


                              AKIN GUMP STRAUSS HAUER & FELD LLP

35

By:   /s/ Sean E. O'Donnell
Sean E. O'Donnell
Robert H. Pees
Jessica L. Oliff
Jennifer C. Hildebrand

One Bryant Park
Bank of America Tower
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
E-mail:  Sodonnell@akingump.com
         Rpees@akingump.com
         Joliff@akingump.com
         Jhildebrand@akingump.com

*Counsel for Sandell Asset Management Corp.,
Satellite Asset Management L.P., CMI Holdings
Investments, Ltd., Castlerigg Partners, L.P.,
Satellite Senior Income Fund, LLC, Satellite Fund I,
L.P., Satellite Fund II, L.P., Ex Orbit Group, Ltd.,
Satellite Overseas Fund, Ltd., The Apogee Fund,
Ltd., Satellite Fund IV, L.P., Satellite Overseas
Fund V, Ltd., Satellite Overseas Fund VI, Ltd.,
Satellite Overseas Fund VII, Ltd., Satellite Overseas
Fund VIII, Ltd., and Satellite Overseas Fund IX,
Ltd. as to counts twelve, thirteen and fourteen*

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

By:   /s/ Thomas R. Slome
Thomas R. Slome
Kevin Schlosser

990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, NY  11530-9194
Telephone: (516) 741-6565
Fax: (516) 741-6706
E-mail: tslome@msek.com
         kschlosser@msek.com

*Counsel for Satellite Asset Management L.P.,
Satellite Senior Income Fund, LLC, Satellite Fund I,
L.P., Satellite Fund II, L.P., Ex Orbit Group, Ltd.,*

36

*Satellite Overseas Fund, Ltd., The Apogee Fund,
Ltd., Satellite Fund IV, L.P., Satellite Overseas
Fund V, Ltd., Satellite Overseas Fund VI, Ltd.,
Satellite Overseas Fund VII, Ltd., Satellite Overseas
Fund VIII, Ltd., and Satellite Overseas Fund IX,
Ltd. as to counts one through six*

CLAYMAN & ROSENBERG LLP

By:  /s/ Denis P. Kelleher
Denis P. Kelleher
Ramsey C. Hinkle

305 Madison Avenue
New York, NY 10165
Telephone: (212) 922-1080
Fax: (212) 949-8255
Email:  Kelleher@clayro.com
           Hinkle@clayro.com

*Counsel for Sandell Asset Management Corp., CMI
Holdings Investments, Ltd., and Castlerigg
Partners, L.P. as to counts one through six*

37

### CERTIFICATE OF SERVICE

I, David M. Hillman, hereby certify that on this 1st day of November 2013, a

copy of the foregoing Memorandum was filed electronically with the Clerk of Court through the

Court's CM/ECF system, thus serving all registered parties.

 /s/ David M. Hillman
David M. Hillman